**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ALLEN T. JACKSON, et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 17-11730** |
| **QBE SPECIALTY INSURANCE COMPANY, et al.** | **SECTION: "G"(2)** |

## ORDER AND REASONS

Before the Court is Plaintiffs Allen T. Jackson and Claire Zimmerman Jackson's (collectively, "Plaintiffs") "Motion to Remand."[1] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant the motion and remand this matter to the 32nd Judicial District Court for the Parish of Terrebonne, State of Louisiana.

## I. Background

### A.    *Factual Background*

On July 12, 2016, Plaintiffs allege that they purchased a home in Houma, Louisiana, for $378,000.[2] Plaintiffs assert that they acquired a homeowners' insurance policy through Terrebonne Insurance Agency ("Terrebonne"), which was effective with QBE Specialty Insurance Company ("QBE").[3] According to Plaintiffs, the policy provided coverage from July 11, 2016 through July 11, 2017.[4]

---

[1] Rec. Doc. 10.

[2] Rec. Doc. 1-1 at 1–2.

[3] *Id.* at 2.

[4] *Id.*

1

In late September 2016, Plaintiffs allege that they discovered that "mold was rampant within the home."[5] Plaintiffs assert that they made a claim with QBE on September 28, 2016, but QBE ultimately refused to pay for remediation of the mold.[6] According to the petition, Plaintiffs could not afford to pay for the remediation and were forced to abandon the home.[7] Furthermore, Plaintiffs allege that they were unable to pay the mortgage on the home due to having to pay for other living arrangements.[8]

## B.    *Procedural Background*

Plaintiffs filed this lawsuit on September 15, 2017, in the 32nd Judicial District Court for the Parish of Terrebonne, State of Louisiana.[9] In the petition, Plaintiffs named QBE and Terrebonne as defendants in the suit.[10] On November 2, 2017, QBE removed the case to this Court, alleging complete diversity of citizenship and an amount in controversy exceeding $75,000.[11] In the Notice of Removal, QBE acknowledges that Terrebonne is a non-diverse defendant, but it asserts that Terrebonne's citizenship should be disregarded for the purposes of establishing diversity jurisdiction because Terrebonne was fraudulently joined as a defendant.[12] Specifically, QBE alleges that Plaintiffs cannot state a claim against Terrebonne because those claims were filed

---

[5] *Id.*

[6] *Id.* at 2, 4.

[7] *Id.* at 6.

[8] *Id.*

[9] *Id.* at 7.

[10] *Id.*

[11] Rec. Doc. 1.

[12] *Id.* at 3.

after the peremptive period had run.[13]

On November 8, 2017, Terrebonne filed a "Motion to Dismiss Pursuant to Rule 12(b)(6), or Alternatively, Motion for Summary Judgment."[14] On December 12, 2017, Plaintiffs filed an opposition to the motion to dismiss.[15] The motion to dismiss is currently pending before the Court.

On December 2, 2017, Plaintiffs filed the instant motion to remand.[16] On December 12, 2017, QBE filed an opposition to the motion to remand.[17] The same date, Terrebonne filed an opposition to the motion to remand.[18] On December 22, 2017, with leave of Court, Plaintiffs filed a reply brief in further support of the motion to remand.[19] On December 22, 2017, with leave of Court, QBE filed a sur-reply brief in further opposition to the motion to remand.[20]

## II. Parties' Arguments

### A.    *Plaintiffs' Arguments in Support of Motion to Remand*

In the motion, Plaintiffs assert that QBE cannot meet its "heavy burden" of proving that joinder of Terrebonne was improper.[21] Plaintiffs argue that although Terrebonne had an office policy wherein an agent or other employee would review the entire insurance application with the prospective buyer and explain the available options of additional coverage, no such review

---

[13] *Id.* at 5.

[14] Rec. Doc. 7.

[15] Rec. Doc. 15.

[16] Rec. Doc. 10.

[17] Rec. Doc. 13.

[18] Rec. Doc. 14.

[19] Rec. Doc. 22.

[20] Rec. Doc. 24.

[21] Rec. Doc. 10-1 at 4 (citing *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003)).

happened when Plaintiffs purchased their policy.[22] Plaintiffs assert that if Terrebonne would have followed this policy, they "would have been told that a rider is available and that most insureds purchase/obtain the rider given that homes in the area are at a high risk for mold."[23]

Plaintiffs cite *NOLA Venture, LLC v. Upshaw Insurance Agency, Inc.*, a case decided by this Court, to support the assertion that although Louisiana law does not recognize a duty owed by an insurance agent to spontaneously advise a client regarding insurance coverage, an agent may voluntarily assume such a duty.[24] Therefore, Plaintiffs submit that the Court should find that they have a viable claim against Terrebonne.[25]

Plaintiffs also cite *Belmont Commons, LLC v. Axis Surplus Insurance Company*, a case where another judge in the Eastern District of Louisiana denied summary judgment by an insurance agent who asserted that the insured's claim was untimely because there was an issue of fact regarding whether the insurance agent assumed a greater duty than imposed under general insurance agency law.[26] Because Plaintiffs allege that Terrebonne had a policy of reviewing applications with customers and explaining available options, Plaintiffs contend that Terrebonne voluntarily assumed a duty to review all coverages.[27]

Finally, Plaintiffs contend that under Louisiana Revised Statute § 9:5606, the one year peremptive period is one year from the date Plaintiffs discovered or should have discovered

---

[22] *Id.* at 5.

[23] *Id.* at 5–6.

[24] *Id.* at 6 (citing No. 12-1026, 2014 WL 4675008, at *9 (E.D. La. Sept. 8, 2014) (Brown, J.)).

[25] *Id.* at 7.

[26] *Id.* (citing 569 F. Supp. 2d 637 (E.D. La. 2008) (Lemelle, J.)).

[27] *Id.* at 7–8.

Terrebonne's negligence and breach of its assumed fiduciary duty.[28] Plaintiffs contend that they learned that almost all of the policies similar to theirs in the Houma area contain a mold rider when the adjuster told them that information on October 7, 2016.[29] Plaintiffs allege they learned of Terrebonne's policy of discussing coverage with clients on October 11, 2016.[30] Therefore, Plaintiffs contend that they filed this suit well within the one year preemptive period.[31] Accordingly, Plaintiffs assert that they have stated a viable claim against Terrebonne, a non-diverse party, and this matter should be remanded to state court.[32]

**B.    *QBE's Arguments in Opposition to the Motion to Remand***

In opposition, QBE argues that the motion to remand should be denied because Plaintiffs' claims against Terrebonne were filed after the preemptive period had run and because Plaintiffs' claims are not covered by their homeowners' insurance policy.[33] QBE asserts that the preemptive period for Plaintiffs to file suit against Terrebonne began to run on August 19, 2016, when Plaintiffs received a copy of their homeowners' insurance policy.[34] Because Plaintiffs did not file suit until September 15, 2017, QBE contends that Plaintiffs' claims against Terrebonne are untimely.[35] QBE asserts that Plaintiffs' contention that the preemptive period should not have

---

[28] *Id.* at 8.

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.* at 8–9.

[33] Rec. Doc. 13 at 1.

[34] *Id.* at 3–4 (citing *Campbell v. Stone Ins., Inc.*, 509 F.3d 665 (5th Cir. 2007)).

[35] *Id.* at 4.

begun to run until they discovered the availability of the mold rider fails because Plaintiffs should have discovered that their policy did not provide mold coverage on the day they received a copy of the policy.[36]

Alternatively, QBE contends that even if Plaintiffs had obtained a mold rider it would not cover the mold at issue because the mold pre-existed the issuance of the insurance policy.[37] QBE notes that Plaintiffs have filed a separate lawsuit wherein Plaintiffs allege that the mold existed in the house before it was purchased by Plaintiffs.[38] Moreover, QBE contends that the policy only covers losses that occur during the policy period.[39] Therefore, because there would be no coverage even if Plaintiffs had obtained a mold rider, QBE asserts that Plaintiffs would not be able to recover against Terrebonne.[40]

Finally, QBE argues that Plaintiffs' reliance on *Belmont* is misplaced because in that case, the plaintiff presented evidence that he requested excess flood coverage from the insurance agent but was told that the coverage could not be obtained.[41] Moreover, QBE contends that this case is distinguishable from *NOLA Ventures*, where the plaintiff met with the insurance agent to discuss coverage.[42] QBE contends that "[t]he principle that flows from *Belmont* and *NOLA* is that if an insured specifically requests or discusses additional coverages with the insurance agent, the agent

---

[36] *Id.* at 4–5.

[37] *Id.* at 6.

[38] *Id.*

[39] *Id.*

[40] *Id.* at 7.

[41] *Id.* (citing 569 F. Supp. 2d at 645).

[42] *Id.* at 8 (citing 2014 WL 4675008, at *1).

may have assumed a heightened duty."[43] Therefore, QBE argues that *Belmont* and *NOLA* are distinguishable from this case because here Plaintiffs never inquired about mold coverage.[44] As a result, QBE asserts that Terrebonne "did not assume a duty greater than that imposed by general insurance agency law, and Plaintiffs' argument that this duty gives them a cause of action should fail."[45] Accordingly, QBE asserts that because QBE is the only properly sued defendant and because QBE and Plaintiffs are diverse, the motion to remand should be denied.[46]

## C.  *Terrebonne's Arguments in Opposition to the Motion to Remand*

In opposition, Terrebonne argues that Plaintiffs cannot establish agency liability because Plaintiffs cannot prove that Terrebonne took action warranting Plaintiffs' assumption that they were properly insured, as Plaintiffs admit that Terrebonne took no action at all.[47] Additionally, Terrebonne contends that it did not assume any duties beyond those typical of the agent-client relationship and did not owe a special duty to the Plaintiffs to advise if they procured the correct type of insurance.[48] Because Terrebonne contends that it had no duty to advise Plaintiffs about coverage, Terrebonne asserts that "peremption cannot commence from when the Plaintiffs allegedly discovered the Agency breached that non-existent duty to provide advice."[49] Therefore,

---

[43] *Id.*

[44] *Id.*

[45] *Id.* at 9.

[46] *Id.*

[47] Rec. Doc. 14 at 1–2 (citing *Parker v. Lexington Ins. Co.*, No. 06-4156, 2006 WL 3328041, at *4 (E.D. La. Nov.15, 2006)).

[48] *Id.* at 3.

[49] *Id.* at 4 (citing *Advanced Radiographics, Inc. v. Colony Ins. Co.*, 2017-144 (La. App. 3 Cir. 10/4/17); 2017 WL 4398726, at *2).

Terrebonne argues that the peremptive period began to run on July 11, 2016, when Plaintiffs knew, or should have known, the homeowners' insurance policy did not cover mold.[50]

## D. Plaintiffs' Arguments in Further Support of Motion to Remand

In the reply brief, Plaintiffs again assert that QBE cannot meet its "heavy burden" of proving that joinder of Terrebonne was improper.[51] Plaintiffs argue that Defendants "have attempted to turn the analysis into a motion for summary judgment type analysis by referring to and/or by submitting an affidavit of the insurance agent and a copy of a lawsuit filed by [Plaintiffs] against the seller of the home."[52] Plaintiffs also assert that Defendants "have also attempted to submit and/or refer to the insurance policy, various emails between the parties, and other extrinsic evidence in order to ask this court to draw conclusions about the evidence as if this was a summary judgment proceeding."[53] Plaintiffs contend that it is improper for Defendants to "submit selected bits of evidence without an opportunity for discovery."[54]

Plaintiffs contend that they did not receive the insurance policy until August 19, 2016, and even if the peremptive period began to run on that date, the suit was timely filed because peremptive periods were suspended under Act 186 of the Louisiana Legislature from August 12, 2016 through September 30, 2016.[55] Furthermore, Plaintiffs contend that because Terrebonne had a voluntarily assumed policy of reviewing the entire insurance application with the applicant,

---

[50] *Id.* at 4–5.

[51] Rec. Doc. 22 at 1.

[52] *Id.* at 2.

[53] *Id.*

[54] *Id.*

[55] *Id.* at 3.

which Terrebonne failed to do in this case, the peremptive period did not begin to run until Plaintiffs learned of this violation.[56]

Next, Plaintiffs note that QBE removed this case on the basis that Plaintiffs cannot not state a claim against Terrebonne because the claims against Terrebonne are untimely, but that in the memorandum opposing the motion to remand, QBE argues that that Plaintiffs cannot state a claim against Terrebonne because any mold rider would not have provided coverage.[57] Plaintiffs aver that the time for QBE to amend the notice of removal has passed and QBE cannot now assert this amended basis for removing the case.[58] Moreover, contrary to QBE's argument, Plaintiffs contend that their claims against the seller of the home are consistent with the claims asserted in this suit.[59] According to Plaintiffs, "QBE speculates that a mold rider would not have provided any coverage, but it offers no evidence of what coverage the rider would have provided and does not explain why there would be no loss during the policy period."[60]

Finally, Plaintiffs assert that Defendants' attempts to distinguish *Belmont* and *NOLA Ventures* are unavailing.[61] Plaintiffs argue that these cases stand for the proposition that an insurance agent can be liable for assuming a duty but then fail to act with reasonable diligence in fulfilling that duty.[62] Therefore, Plaintiffs contend that these cases are relevant to the instant matter

---

[56] *Id.*

[57] *Id.*

[58] *Id.* at 5.

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.*

because "Terrebonne assumed a number of duties on which it failed to act with reasonable diligence."[63] For these reasons, Plaintiffs assert that they have stated a viable cause of action against Terrebonne and the motion to remand should be granted.[64]

**E.     *QBE's Arguments in Further Opposition to the Motion to Remand***

In the sur-reply, QBE argues that the Court can consider summary-judgment type evidence when considering fraudulent joinder.[65] Moreover, QBE contends that it did not raise a new ground for removal in the opposition memorandum.[66] Instead, QBE argues that the lack of coverage is an additional argument for the fraudulent joinder theory of removal.[67] Finally, QBE asserts that Terrebonne did not assume a duty under the facts presented here.[68] Therefore, QBE avers that the motion to remand should be denied.[69]

<h3 align="center">III. Legal Standard</h3>

A defendant may remove a state civil court action to federal court if the federal court has original jurisdiction over the action.[70] A federal court has subject matter jurisdiction over an action "where the matter in controversy exceeds the sum or value of $75,000" and the action "is between

---

[63] *Id.*

[64] *Id.* at 6.

[65] Rec. Doc. 26 at 2 (citing *Morris Kirschman & Co., L.L.C. v. Sicuro*, No. 03-1743, 2003 WL 22284553, at *2 (E.D. La. Sept. 30, 2003); *White v. Encompass Ins. Co. of America*, No. 06-8566, 2007 WL 458259, at *1 (E.D. La. Feb. 5, 2007)).

[66] *Id.* at 3.

[67] *Id.*

[68] *Id.* at 4.

[69] *Id.*

[70] 28 U.S.C. § 1441(a); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002).

citizens of different states."[71] The removing party bears the burden of demonstrating that federal jurisdiction exists.[72] Subject matter jurisdiction is fixed at the time of removal, and it cannot be eliminated by events that occur after removal.[73] The removal statute, 28 U.S.C. § 1441(b), states that "[i]n determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."

In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that "removal statute[s] should be strictly construed in favor of remand."[74] Remand is appropriate if the Court lacks subject matter jurisdiction, and "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."[75] Moreover, 28 U.S.C. § 1447(c) states: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

In this case, complete diversity of citizenship is lacking on the face of the state court petition because Plaintiffs and Terrebonne are citizens of Louisiana. Despite the presence of a non-diverse defendant in this lawsuit, Defendants argue that this Court has diversity jurisdiction because Plaintiffs have fraudulently joined Terrebonne in order to defeat diversity jurisdiction.

---

[71] 28 U.S.C. § 1332(a)(1).

[72] *See Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

[73] *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996) ("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events.").

[74] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[75] *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) (citing *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988)).

"The fraudulent joinder doctrine ensures that the presence of an improperly joined, non-diverse defendant does not defeat federal removal jurisdiction premised on diversity."[76] The party asserting fraudulent joinder "bears a heavy burden of proving that joinder of the in-state party was improper."[77] The Fifth Circuit has long recognized two methods of fraudulent joinder: (1) actual fraud in the pleading of jurisdictional facts, and (2) the inability of the plaintiffs to plead a cause of action against the non-diverse defendants in state court.[78] In this case, Defendants allege that Terrebonne is fraudulently joined because Plaintiffs cannot plead a cause of action against Terrebonne.

In *Smallwood v. Illinois Central Railroad Co.*, the Fifth Circuit stated that "the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[79] District courts may assess whether a plaintiff has "a reasonable basis of recovery under state law" in either of two ways.[80] First, "[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant."[81] Second, in rare cases, if

---

[76] *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009) (internal citations omitted).

[77] *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 574 (5th Cir. 2004).

[78] *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006) (internal citations omitted). The Fifth Circuit also refers to "fraudulent joinder" as "improper joinder." *See Melder v. Allstate Corp.*, 404 F.3d 328, 329 (5th Cir. 2005). However, the term "fraudulent joinder" is still used in many Fifth Circuit cases. *See, e.g., Crockett*, 436 F.3d 532. For clarity and consistency, the Court will use the term "fraudulent joinder" throughout.

[79] *Smallwood*, 385 F.3d at 573.

[80] *Id.*

[81] *Id.*

"a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."[82]

If a court decides to "pierce the pleadings" when assessing a claim of fraudulent joinder, it may "consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff," and resolve "[a]ny contested issues of fact and any ambiguities of state law" in the plaintiff's favor.[83] However, a court does not assess "whether the plaintiff will actually or even probably prevail on the merits of the claim," but only determines whether there is "a possibility that the plaintiff might do so."[84] In other words, where courts choose to pierce the pleadings, the party asserting fraudulent joinder must provide evidence that "negate[s] the possibility" that the non-diverse party may be held liable.[85] The Fifth Circuit has stated that district court should look at summary judgment-type evidence at this stage of the proceedings only in those cases, "hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder."[86] Even in such cases, the district court's decision to pierce the pleadings and conduct a summary inquiry is within in its discretion.[87]

---

[82] *Id.*

[83] *Travis v. Irby*, 326 F.3d 644, 648–49 (5th Cir. 2003)

[84] *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308–09 (5th Cir. 2005).

[85] *Travis*, 326 F.3d at 650.

[86] *Smallwood*, 385 F.3d at 573.

[87] *Id.*

## IV. Analysis

In the Notice of Removal, QBE acknowledges that Terrebonne is a non-diverse defendant, but it asserts that Terrebonne's citizenship should be disregarded for the purposes of establishing diversity jurisdiction because Terrebonne was fraudulently joined as a defendant.[88] Specifically, QBE alleges that Plaintiffs cannot state a claim against Terrebonne because those claims are perempted under Louisiana law.[89] In the motion to remand, Plaintiffs argue that the peremptive period did not begin to run until October 11, 2016, when Plaintiffs discovered Terrebonne's negligence and breach of its assumed fiduciary duty.[90] In opposition, QBE argues that Plaintiffs' claims against Terrebonne are untimely because the peremptive period for Plaintiffs to file suit against Terrebonne began to run on August 19, 2016, when Plaintiffs received a copy of their homeowners' insurance policy.[91] Terrebonne argues that the peremptive period began to run on July 11, 2016, the date the policy was issued, because at that time, Plaintiffs knew, or should have known, the homeowners' insurance policy did not cover mold.[92]

"Louisiana law provides a peremptive period of only one year for tort actions against an insurance agent arising from insurance services."[93] In relevant part, Louisiana Revised Statute § 9:5606(A) states:

> No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or

---

[88] Rec. Doc. 1 at 3.

[89] *Id.* at 5.

[90] Rec. Doc. 10-1 at 8.

[91] Rec. Doc. 13 at 3–4 (citing *Campbell v. Stone Ins., Inc.*, 509 F.3d 665 (5th Cir. 2007)).

[92] Rec. Doc. 14 at 4–5.

[93] *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009).

otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered.

Plaintiffs filed the petition in Louisiana state court on September 15, 2017. Thus, Section 9:5606(A) preempts any claims against Terrebonne that Plaintiffs discovered or should have discovered before September 15, 2016.

The Fifth Circuit addressed an issue similar to the one presented here in *Ruiz v. Allstate Insurance Company*.[94] There, the plaintiff filed a lawsuit in state court against both his insurer and his insurance agency following Hurricane Katrina, claiming that the insurer failed to compensate him under his homeowner's and landlord insurance policies and that the agency breached its fiduciary duty by failing to advise him of his potential need for flood insurance.[95] The insurer removed the case to federal court, invoking the court's diversity jurisdiction and asserting that the plaintiff had improperly joined the non-diverse insurance agency.[96] The plaintiff filed a motion to remand, which the district court denied.[97] The district court found that the plaintiff had improperly joined the insurance agency because Louisiana law imposes no duty on insurance agents to identify spontaneously a client's needs and advise him as to whether he is underinsured or carries the right type of coverage.[98]

---

[94] 295 F. App'x 668 (5th Cir. 2008).

[95] *Id.* at 669.

[96] *Id.*

[97] *Id.* at 670.

[98] *Id.*

Although the district court did not reach the alternative argument that Louisiana law preempted any claims against the insurance agency, the Fifth Circuit affirmed on this basis.[99] The Fifth Circuit found that "[t]he peremptive period of § 9:5606(A) began to run on [the plaintiff's] purported claim for failure to procure flood insurance when [the plaintiff] discovered or should have discovered that any new policy procured by the [insurance agency] lacked flood coverage."[100] The homeowner's insurance policy expressly stated that loss to the property caused by flood would not be covered, and the plaintiff admitted he received a copy of the policy more than one year before he filed the case.[101] Accordingly, the Fifth Circuit held that Section 9:5606(A) preempted the plaintiff's claim that the insurance agency failed to procure flood insurance because the record conclusively established that the plaintiff either knew or should have known that the insurance agency had failed to procure flood insurance on the property when the plaintiff received a copy of the policy.[102]

In this case, Plaintiffs' homeowners' insurance policy was issued effective July 11, 2016. On July 12, 2016, Plaintiff Claire Jackson signed a quote and insurance application, which stated that mold was not covered by the policy.[103] On July 22, 2016, Terrebonne emailed Plaintiff Claire Jackson an itemized list describing the coverages in the policy and disclosing that mold was not covered.[104] On July 28, 2016, Terrebonne mailed Plaintiffs a copy of the homeowners' insurance

---

[99] *Id.* at 672.

[100] *Id.*

[101] *Id.*

[102] *Id.*

[103] Rec. Doc. 7-6 at 1, 3.

[104] Rec. Doc. 7-7 at 1.

policy, which states that mold is not covered.[105] On August 19, 2016, at the request of Plaintiff Allen Jackson, Terrebonne emailed a copy of the homeowners' insurance policy, which states that mold is not covered.[106]

QBE correctly notes that the Fifth Circuit has recognized that the peremptive period can begin to run on the date that a copy of the insurance policy was received.[107] However, Terrebonne correctly points out that Louisiana courts have held that receipt of insurance applications were sufficient to commence the peremptive period for bringing suit against an insurance agency.[108] Therefore, the peremptive period likely began to run by July 12, 2016, when Plaintiff Claire Jackson signed a quote and insurance application, which stated that mold was not covered by the policy, or at the latest on July 22, 2016, when Terrebonne sent Plaintiffs an itemized list describing the coverages in the policy and disclosing that mold was not covered.

Plaintiffs also note that the peremptive period of Louisiana was suspended by the governor on August 12, 2016. Specifically, in response to catastrophic flooding in parts of the state resulting from an extended period of heavy rainfall, the governor signed Executive Orders JBE 2016-53, JBE 2016-57, and JBE 2016-66, suspending prescriptive and peremptive periods. In 2017, the legislature enacted Louisiana Revised Statute § 9:5827, which provides that all prescriptive and "peremptive periods were suspended or extended for a period beginning August 12, 2016, and ending September 30, 2016." Under this statute, the peremptive period was suspended for 49 days,

---

[105] Rec. Doc. 7-8 at 16, 18.

[106] Rec. Doc. 7-9 at 18, 20.

[107] *Campbell v. Stone Ins. Co.*, 509 F.3d 665, 672 (5th Cir. 2007).

[108] *Bates v. Allstate Ins. Co.*, 2010-0234 (La. App. 4 Cir. 9/29/10); 48 So. 3d 1141, 1144; *Burk Property Investments, LLC v. Alliance Ins. Agency Serv., Inc.*, 2008–0489 (La. App. 4 Cir. 9/10/08); 993 So.2d 810.

meaning that Plaintiffs had one year and 49 days after the peremptive period began to run to file suit. Plaintiffs did not file this suit until September 15, 2017, one year and 65 days after July 12, 2016, and one year and 55 days after July 22, 2016. Accordingly, to the extent Plaintiffs claim that Terrebonne failed to procure mold coverage, such a claim is likely untimely under Louisiana law.

However, the inquiry does not end there because Plaintiffs also argue that Terrebonne breached an assumed duty to review the entire insurance application with Plaintiffs and explain the available options of additional coverage.[109] Plaintiffs contend that the peremptive period did not begin to run until October 11, 2016, when Plaintiffs discovered Terrebonne's negligence and breach of its assumed fiduciary duty.[110] In response, QBE and Terrebonne assert that no duty to explain additional coverage was assumed, and so the peremptive period could not have begun running on October 11, 2016, when Plaintiffs learned of the alleged policy.

Under Louisiana law, "[a]n insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance."[111] In order to recover for a loss arising out of the failure of an insurance agent to obtain insurance coverage, a plaintiff must prove:

> (1) an undertaking or agreement by the insurance agent to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) actions by the agent warranting the client's assumption that the client was properly insured. [112]

---

[109] Rec. Doc. 10-1 at 5.

[110] *Id.* at 8.

[111] *Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So. 2d 728, 730 (La. 1973).

[112] *Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224, 229 (5th Cir. 1990) (internal citations omitted).

Louisiana law does not recognize a duty owed by an insurance agent to spontaneously advise or procure any specific type or amount of insurance coverage for a client.[113] Rather, the responsibility rests with the insured to read his policy and request the required coverage.[114] However, in some instances an insurance agent can be held liable for failing to advise the client of recommended coverage.

In *Offshore Production Contractors, Inc. v. Republic Underwriters Insurance Co.*, the Fifth Circuit recognized that an insurance broker's duties included "advising his client with regard to recommended coverage" and informing him when the policy he procured did not cover "a specific risk about which the client expressed concern."[115] The Fifth Circuit reasoned that the insurance broker was more than a mere "order taker for the insured" because the broker knew of a specific risk for which his client desired coverage and had worked over 30 years in the insurance industry, specializing in insuring enterprises similar to that of the plaintiff's.[116]

Plaintiffs cite *NOLA Venture, LLC v. Upshaw Insurance Agency, Inc.*, a case decided by this Court, to support the assertion that although Louisiana law does not recognize a duty owed by an insurance agent to spontaneously advise a client regarding insurance coverage, an agent may voluntarily assume such a duty.[117] In *NOLA Venture*, the plaintiff, relying on *Offshore*, argued that its insurance agent had voluntarily undertaken a duty to procure blanket insurance coverage for

---

[113] *Isidore Newman School v. J. Everett Eaves Inc.*, 2009–2161 (La. 7/6/10); 42 So. 3d 352.

[114] *Id.*

[115] *Id.* at 230–31.

[116] *Id.* at 230.

[117] Rec. Doc. 10-1 at 6 (citing 2014 WL 4675008, at *9).

the plaintiff's restaurant locations.[118] This Court denied a motion for summary judgment filed by the agent because it found that there was a genuine issue of material fact as to whether the insurance agent had voluntarily assumed a duty beyond acting with reasonable diligence to explain each policy provision to the plaintiff.[119]

Plaintiffs also cite *Belmont Commons, LLC v. Axis Surplus Insurance Company*, a case where another judge in the Eastern District of Louisiana denied summary judgment by an insurance agent who asserted that the insured's claim was untimely because there was an issue of fact regarding whether the insurance agent assumed a greater duty than imposed under general insurance agency law.[120] There, the plaintiff argued that it requested that the insurance agent procure additional flood coverage, but the agent told the plaintiff that it had the maximum coverage available.[121] The district court denied a motion for summary judgment filed by the agent because it found that there was a genuine issue of material fact as to whether the insurance agent undertook or agreed to procure additional flood insurance and in that role, failed to use reasonable diligence in attempting to place the insurance.[122] The district court also determined that the peremptive period began to run on the date that the plaintiff learned that the additional coverage was available, not earlier when the agent allegedly misled the plaintiff regarding the availability of the additional coverage.[123]

---

[118] 2014 WL 4675008, at *9.

[119] *Id.*

[120] Rec. Doc. 10-1 at 7 (citing 569 F. Supp. 2d at 645).

[121] 569 F. Supp. 2d at 645.

[122] *Id.*

[123] *Id.* at 642–43.

In *Campbell v. Stone Insurance, Inc.*, the plaintiffs claimed that their insurance agent misrepresented that flood coverage was not available to them through the National Flood Insurance Program because the plaintiffs were renters of a home, not homeowners.[124] On appeal, the Fifth Circuit held that the peremptive period for that claim began to run on August 15, 2004, when the plaintiff signed a flood rejection form, which stated that the insurance agency "offered Flood Insurance Coverage, in the National Flood Program through Omaha Property & Casualty," because the form gave the plaintiffs constructive knowledge of the alleged misrepresentation.[125]

In this case, Plaintiffs admit that they never spoke to Terrebonne about mold coverage or requested such coverage. Instead, Plaintiffs argue that although Terrebonne had an office policy in place wherein an agent or other employee would review the entire insurance application with the prospective buyer and explain the available options of additional coverage, no such review happened when Plaintiffs purchased their policy.[126] Plaintiffs assert that if Terrebonne would have followed this policy they "would have been told that a rider is available and that most insureds purchase/obtain the rider given that homes in the area are at a high risk for mold."[127] Plaintiffs contend that they only learned that almost all of the policies like theirs in the Houma area contain a mold rider when the adjuster told them that information on October 7, 2016, and that they learned of Terrebonne's policy of discussing coverage with clients on October 11, 2016.[128]

Although Louisiana law does not recognize a duty owed by an insurance agent to

---

[124] 509 F.3d at 672.

[125] *Id.*

[126] Rec. Doc. 10-1 at 5.

[127] *Id.* at 5–6.

[128] *Id.* at 8.

spontaneously advise or procure any specific type or amount of insurance coverage for a client,[129] Plaintiffs argue that Terrebonne voluntarily assumed such a duty by adopting a company policy of reviewing all insurance applications with its customers and the duty was breached in this case because Terrebonne failed to review the application with Plaintiffs. Under this theory, the peremptive period would likely not have begun to run until October 11, 2016, when Plaintiffs discovered Terrebonne's policy.

Plaintiffs do not cite any cases where an insurance agency was held liable for breaching an assumed company policy of reviewing insurance applications with its customers. However, Defendants also fail to cite any law to the contrary holding that an insurance agent cannot be held liable for assuming such a policy. QBE, as the removing defendant, bears the heavy burden of proving that joinder of Terrebonne was improper.[130] Considering Plaintiffs' allegations that Terrebonne breached an assumed duty to review the application with Plaintiffs and the failure of QBE to cite any law holding that an insurance agency cannot voluntarily assume such a duty, the Court cannot find that QBE has satisfied its burden of negating the possibility that Terrebonne may be held liable in this action.[131]

Alternatively, QBE contends that Plaintiffs cannot prevail in their claim against Terrebonne because even if Plaintiffs had obtained a mold rider it would not cover the mold at issue as the mold pre-existed the issuance of the insurance policy.[132] QBE notes that Plaintiffs have

---

[129] *Isidore Newman School*, 42 So. 3d at 352.

[130] *Smallwood*, 385 F.3d at 574.

[131] *Travis*, 326 F.3d at 650.

[132] Rec. Doc. 13 at 6.

filed a separate lawsuit wherein Plaintiffs allege that the mold existed in the house before it was purchased by Plaintiffs, and the policy only covers losses that occurred during the policy period.[133] Even assuming that this argument was properly raised as a grounds for removal, QBE presents no evidence showing what coverage the rider would have provided or showing that there was no loss during the policy period. Therefore, QBE has not shown that Plaintiffs cannot prevail in their claim against Terrebonne.

On a motion to remand based on fraudulent joinder, the Court cannot assess "whether the plaintiff will actually or even probably prevail on the merits of the claim," but only determines whether there is "a possibility that the plaintiff might do so."[134] Furthermore, all "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."[135] Considering that it is not clear that Plaintiffs will be unable to prevail on their claims against Terrebonne, the non-diverse defendant, the Court lacks subject matter jurisdiction over this case and must remand it to the state court from which it was removed.

## V. Conclusion

Based on the foregoing, the Court finds that QBE has failed to carry its heavy burden of establishing that Terrebonne has been fraudulently joined to this action. Because this Court lacks subject matter jurisdiction in this case, remand to state court is appropriate. Accordingly,

---

[133] *Id.*

[134] *Guillory*, 434 F.3d at 308–09.

[135] *Acuna*, 200 F.3d at 339.

**IT IS HEREBY ORDERED** that Plaintiffs' "Motion to Remand"[136] is **GRANTED** and this matter is remanded to the 32nd Judicial District Court for the Parish of Terrebonne, State of Louisiana.

**NEW ORLEANS, LOUISIANA**, this ___13th___ day of July, 2018.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[136] Rec. Doc. 10.